# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF GEORGIA

# SAVANNAH DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. CR410-159 |
| | ) | |
| AL WELCH | ) | |

## REPORT AND RECOMMENDATION

Al Welch, one of the defendants in this drug conspiracy case, has moved to suppress the evidence seized during separate searches of a residence and hotel room, areas where the government concedes he had a reasonable expectation of privacy. (Docs. 526 & 530.)[1] The Court conducted a hearing on these motions on August 3, 2011. For the following reasons, the motions should be **DENIED**.

## I.   BACKGROUND

This and a related case, *United States v. Murdock*, No. CR410-160 (S.D. Ga. filed June 10, 2010), stem from a two-year investigation focusing upon Hezekiah Murdock, a key figure in a large, multi-district

---

[1]   All documents referenced in this R&R use the electronic screen-page pagination printed across the top of each page by the Court's CM/ECF software.

drug conspiracy centered in Savannah, Georgia. Michael DeLaTorre, a member of the Counter Narcotics Team ("CNT"),[2] served as one of the case agents for the joint federal-state investigation. He testified that as a result of a six-month wiretap on Murdock's phone, agents confirmed that Murdock was a major drug dealer in the Savannah area and determined that Jermaine Tandy was one of Murdock's drug suppliers.

On March 9, 2010, the investigators learned through a wiretap intercept that Tandy was expecting a large shipment of high quality marijuana the following day and told Murdock that he could have all of the shipment he wanted. The agents believed that Tandy lived at 12833 Stillwood Road,[3] a duplex that adjoins a golf course, for they had previously spotted him going in and out of that residence and had seen him allowing a plumber access to the premises. (Gov't's ex. 1 ("Stillwood

_____

[2] CNT is a multi-agency task force that includes members of the local police and sheriff's departments as well as several other local agencies.

[3] While DeLaTorre referred to the property as Stillwood *Road* both in his search warrant affidavit and during the suppression hearing, the Court believes that the true address may be Stillwood *Drive*. *See* http://www.google.com/maps (last visited Aug. 17, 2011). No issue concerning the property's correct address is presented by the motions filed in this case.

Road" search warrant application) at 3.) The agents later learned that defendant Al Welch also resided there.

The investigators began their surveillance of the residence around 7 a.m. on March 10, the day of the scheduled marijuana delivery. At 8:23 a.m., Tandy drove up in a blue Chrysler Aspen, which the agents determined to be a rental vehicle. (Gov't's ex. 1 at 4.) Tandy went into the house and exited carrying a large (2x3 foot) blue plastic storage container, which he handled easily, as if it were empty. He placed the container in the Aspen and departed.

Surveillance agents followed Tandy to South Carolina where he met up with his cousin, Vincent Robinson, and Robinson's girlfriend. They drove around to three banks, and Robinson's girlfriend entered each of them. Later, agents observed Tandy purchase gallon-size Ziploc plastic bags and garbage bags at a Walgreens store. Based on these observations and the information gained through the wiretap, DeLaTorre concluded that Tandy was in the process of acquiring the marijuana he intended to sell to Murdock later that day. As the reports came in from the field agents, DeLaTorre prepared a search warrant

application for the Stillwood Road address. Upon its completion, he had the warrant application reviewed and approved by an assistant district attorney and then presented it to a state recorder's court judge, who signed the warrant at 1:15 p.m. on March 10, 2010.

DeLaTorre initially expected Tandy to return to Savannah with the marijuana, and he planned to execute the warrant at that time. But while Tandy was still in South Carolina, the surveillance agents elected to conduct a traffic stop of his vehicle. During a search of the Aspen, the agents recovered nearly 20 pounds of marijuana packaged in gallon-size Ziploc bags that were stored inside the blue plastic tub that Tandy had earlier retrieved from his residence.[4]

After Tandy's arrest, the agents executed the warrant at the Stillwood Road residence. Before they entered, two people bolted from the back door, jumped the fence, and fled. The agents gave chase and caught Jerry Welch, defendant Al Welch's brother, about a quarter mile

---

[4] The information concerning the discovery of the marijuana in the plastic tub was not developed until after DeLaTorre had prepared his search warrant affidavit. Indeed, the traffic stop of Tandy's vehicle (and consequent discovery of the marijuana) did not occur until around 5:30 p.m., over 4 hours after the issuance of the search warrant for 12833 Stillwood. Thus, in evaluating probable cause the Court must be mindful that the state judge had no knowledge that the plastic tub was actually used to store marijuana.

from the residence. The other man got away, but agents later determined that he was Al Welch, for they intercepted his phone call to Murdock relating that he had run from the house and discarded a firearm during his flight. Even before they received this information, however, the agents recovered a Taurus .45 caliber handgun lying on the ground just beyond the back yard fence that separated 12833 Stillwood Road from golf course property.

Several months later, the agents sought to arrest Al Welch pursuant to a warrant. On July 7, 2010, agents unsuccessfully attempted to locate Welch at the Stillwood Road duplex, his parents' home, and various other locations where he had promised to meet his parole officer. (Gov't's ex. 2 at 2 (Gateway Inn search warrant affidavit).) Eventually, agents spotted him driving a black Dodge Charger with a South Carolina tag, stopped the vehicle, and took him into custody without incident. During an inventory search of Welch's car, DeLaTorre detected the overpowering odor of fresh marijuana emanating from the vehicle and observed a green leafy substance characteristic of marijuana residue scattered about the trunk. (*Id*. at 5.) Based on his training and

experience, DeLaTorre concluded that the trunk had previously contained a bulk quantity of marijuana. (*Id.*) Inside the vehicle agents also discovered a room key for the Gateway Inn. DeLaTorre handed the key over to his supervisor, who dispatched Officer Gene Harley to the hotel.

The hotel manager confirmed that the room had been rented earlier in the day to a man who used the name "James Graham." (*Id.* at 6.) Harley parked out of the way and called a K-9 unit to the scene. When "Corporal Malachi"[5] arrived, he dragged his handler from nearly ten rooms away directly to Room 111, where he sat and barked, alerting to the presence of illegal drugs. (*Id.*) Harley stated both in his affidavit and at the hearing that he heard voices coming from the room and noticed a slight movement in the room's curtains. (*Id.*) Concerned that

---

[5] Corporal Malachi, a Labrador partnered with Corporal Stephen Darnstaedt, was nominated for the National "Hero Dog" award this year. According to a Chatham County Sheriff's Department press release, "Malachi's nose for narcotics has led to 145 felony arrests and more than a hundred misdemeanors. He has helped seize nearly a ton of marijuana, 55 firearms and $110,000 in cash." *See* June 21, 2011 Chatham County Sheriff Department's Press Release, *available at* http://www.chathamsheriff.org/LinkClick.aspx?fileticket=MuDhOJo35oI%3d&tabid=424&mid=1130 (last visited Aug. 4, 2011).

someone (perhaps James Graham) was inside the room and had been alerted to law enforcement presence by Corporal Malachi's bark, Harley contacted his supervisor and was instructed to enter the room and secure it. He knocked, waited about thirty seconds, then opened the door with the key, announced his presence, and swept the hotel room. He noted an assault rifle on the floor near the bed, marijuana on the sink in the bathroom, and two large garbage bags of marijuana in the shower. He also discovered that the television and air conditioning were on, which explained the voices and restless curtains. After finding no one present, he and the other agents stepped out of the room and secured it from the outside. Meanwhile, the hotel manager showed Harley a video of "James Graham" renting the room. Harley recognized that Graham was actually Al Welch.

While the hotel events were unfolding, Agent DeLaTorre drafted a search warrant affidavit for the room. (Gov't's ex. 2.) After the warrant was signed, the agents re-entered the room and seized an M-4 assault rifle and approximately 13 pounds of marijuana.

## II.  ANALYSIS

### A.    12833 Stillwood Road

Welch contends that the evidence seized from his residence should be suppressed because: (1) the search warrant was not supported by probable cause, and (2) the warrant was "anticipatory" and thus Tandy's arrest obviated the need for the warrant.[6]  (Doc. 530 at 2-3.)

As to the first ground, the task of a court reviewing the validity of a search warrant is not to make a *de novo* determination of probable cause but rather to evaluate whether the issuing magistrate had a "substantial basis" for finding probable cause.  *Illinois v. Gates*, 462 U.S. 213, 236 (1983); *Massachusetts v. Upton*, 466 U.S. 727, 722-23 (1984).  In making that determination, a reviewing court should interpret the affidavit in a "commonsense" rather than "a hypertechnical . . . manner." *United States v. Ventresca*, 380 U.S. 102, 109 (1965).  This Court must give

---

[6] The record reflects that both Tandy and Welch were on parole and that as a condition of parole Tandy may have executed a Fourth Amendment waiver.  (Gov't's ex. 1 at 3.)  The government, however, never established that either Tandy or Welch had signed such a waiver or argued that they had no right to claim the protections of the Fourth Amendment.

"great deference" to the state court judge's determination of probable cause. *Gates*, 462 U.S. at 236.

In this case, the state judge had a substantial basis for finding probable cause existed to search defendant's residence. The affidavit related that the agents had identified Jermaine Tandy as a regular supplier of drugs for Hezekiah Murdock. (Gov't ex. 1 (search warrant affidavit) at 3.) They knew that Tandy was on felony probation imposed following a 2009 guilty plea for drug and firearms offenses. (*Id.*) The agents believed that Tandy resided at 12833 Stillwood Road, for they had observed him going in and out of the residence and giving a plumber access to the premises. On March 9, 2010, the agents received reliable information that Tandy was expecting "a very large shipment of high quality marijuana" the following day. (*Id.* at 3, 4.) While conducting surveillance early the next morning agents observed Tandy arrive at the residence in a rental car, and DeLaTorre noted his knowledge that the use of rental vehicles is a trademark of those engaged in conducting drug deals. (*Id.* at 4.) Tandy then exited the premises carrying a large, empty plastic container and placed it in the back seat of his vehicle. (*Id.*)

Agents followed Tandy to South Carolina, where they observed him travel to three different banks and purchase the type of plastic bags commonly used by drug dealers to package marijuana. (*Id.*)

Based on the totality of the information set forth in the search warrant affidavit, the state judge reasonably drew the inference that Tandy was engaged in drug trafficking while on parole for a drug offense, that he was in the process of acquiring a large shipment of marijuana, that he intended to use the plastic tub he had retrieved from his residence to further his marijuana venture, and that other evidence of his drug trafficking activities was likely stored inside the residence at 12833 Stillwood Road.

Welch points to the well-established principle that "[p]robable cause to search requires some nexus between the premises and the alleged crime." *United States v. Bradley*, 644 F.3d 1213, 1263 (11th Cir. 2011); *United States v. Martin*, 297 F.3d 1308, 1314 (11th Cir. 2002) (a search warrant affidavit should establish a link not only between a suspect and the residence to be searched but also between that residence and the suspected criminal activity). But it is equally well-established

that "'[t]he nexus between the objects to be seized and the premises searched can be established from the particular circumstances involved and need not rest on direct observation.'" *Bradley*, 644 F.3d at 1263 (quoting *United States v. Jenkins*, 901 F.2d 1075, 1080-81 (11th Cir. 1990)). Here, not only had the agents previously observed Tandy exercising control over the premises, but on the very day that he was scheduled to receive a large shipment of marijuana they saw him enter the residence and retrieve a plastic storage tub before departing for South Carolina to complete the drug deal. While the affidavit did not state that the plastic tub was actually used to store the marijuana shipment (for that information was not then available), it was certainly reasonable for the state judge to infer that the container was intended to be used as a receptacle for the expected marijuana shipment.[7] So, the

---

[7] True, it is possible that Tandy intended to use the plastic container for some other, entirely legitimate purpose. But a probable cause assessment deals in *probabilities*, not certainties, and there is no requirement that a probable cause finding rule out all such innocent explanations. *Gates*, 462 U.S. at 238 (probable cause requires only a "fair probability" that evidence will be found in the place to be searched; "'a prima facie showing'" is not required); *United States v. $242,484*, 389 F.3d 1149, 1160 (11th Cir. 2004) (en banc) (the existence of an "alternative hypothesis" of innocent behavior does not deprive probable cause evidence of its probative value). Here, it was a reasonable inference, indeed perhaps the *most* reasonable inference, that Tandy planned to use the container in stowing and transporting his marijuana shipment.

affidavit set forth persuasive evidence that Tandy kept "packaging materials" -- one of the items specifically listed in the warrant application as property to be sought for during the search -- inside his residence. Once that inference was made, it was reasonable for the state judge to reach the further inference that additional evidence of Tandy's drug activities was also likely to be found in the residence. The contrary inference -- that the plastic storage tub was the only item pertinent to Tandy's drug activities to be kept inside the residence -- was not particularly likely under the totality of the information presented to the issuing judge.[8]

Giving due deference to the state judge's determination, the Court finds that the search warrant affidavit set forth facts sufficient to justify

---

[8] Many courts have recognized that it is reasonable for a magistrate to infer that drug dealers keep evidence of their drug dealing in their homes. *See, e.g.*, *United States v. Grossman*, 400 F.3d 212, 217-18 (4th Cir. 2005); *United States v. Miggins*, 302 F.3d 384, 393-94 (6th Cir. 2002); *United States v. Pitt*, 6 F.3d 1366, 1369 (9th Cir. 1993); *United States v. Acosta*, ___ F. Supp. 2d ___, 2011 WL 2401829 (N.D. Ga. June 13, 2011) (collecting cases); 2 WAYNE R. LAFAVE, SEARCH AND SEIZURE § 3.7(d) at 421-22 & n. 168.1 (2011 ed.).

the conclusion that evidence of Tandy's drug trafficking activities would likely be found inside his residence.[9]

Even if the Court were to find that the warrant fell short of the probable cause standard, the agents' reliance upon the warrant was objectively reasonable, and therefore the evidence seized during its execution need not be suppressed. The judicially-crafted exclusionary rule does not apply where an officer acts in objective, good faith reliance upon a search warrant that is only later determined to be invalid as not supported by probable cause. *United States v. Leon*, 468 U.S. 897, 900 (1984) (modifying the Fourth Amendment exclusionary rule to preclude suppression "of evidence obtained by officers acting in reasonable reliance on a search warrant issued by a detached and neutral magistrate but ultimately found to be unsupported by probable cause."). Generally, evidence obtained under an invalidated search warrant must be

---

[9] In any event, there is no basis for suppression of the firearm since it was abandoned. Numerous cases have held that a defendant who discards a firearm while fleeing from the police effectively abandons his interest in that weapon. *See, e.g., United States v. Simpson*, 439 F.3d 490, 494 (8th Cir. 2006) (defendant abandoned any interest in a rifle discarded during a police chase); 1 LaFave, § 2.6(b). Here, the gun was discarded during Welch's flight from the agents, a fact that he admitted during a wiretap intercept.

suppressed only if the officer "could not have harbored an objectively reasonable belief in the existence of probable cause." *Id.* at 926; *United States v. Taxacher*, 902 F.2d 867, 871 (11th Cir. 1990) (the *Leon* court "stated that searches conducted pursuant to warrants rarely require suppression"). Thus, the appropriate question for a reviewing court to consider is "whether a reasonably well-trained officer would have known that the search was illegal despite the magistrate's authorization." *Leon,* 468 U.S. at 922 n. 23.[10]

Here, Welch has not even contested the government's good faith showing, either in his response or at the hearing. Indeed, he seemed to

---

[10] The *Leon* court reasoned that the purpose of the exclusionary rule -- which is "to deter police misconduct rather than to punish the errors of judges and magistrates" -- is not served "when an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope," for where there is no police illegality there is nothing to deter. 468 U.S. at 916, 920, 921. While a warrant issued by a magistrate normally suffices to establish that the officer acted in good faith in conducting his search, the Court identified four situations where it would be unreasonable for an officer to rely upon a warrant (and, thus, where suppression would remain an appropriate remedy): (1) where the magistrate or judge "was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth;" (2) "where the issuing magistrate wholly abandoned his judicial role;" (3) where the warrant is "based on an affidavit 'so lacking in indicia probable cause as to render official belief in its existence entirely unreasonable;'" and (4) where the warrant is "so facially deficient . . . that the executing officers cannot reasonably presume it to be valid." *Id.* at 923. Welch has not argued that any of these limitations to the *Leon* good faith rule is applicable in this case.

concede at the hearing that the good faith doctrine would apply had (in his view) the need for the warrant not disappeared when Tandy was arrested. The Court, however, rejects Welch's characterization of the warrant as "anticipatory." "An anticipatory warrant is 'a warrant based upon an affidavit showing probable cause that at some future time (but not presently) certain evidence of crime will be located at a specified place.'" *United States v. Grubbs*, 547 U.S. 90, 95 (2006) (quoting 2 LaFave, § 3.7(c)). DeLaTorre's affidavit, however, established probable cause to believe that evidence of Tandy's marijuana business was *presently* inside his residence. Nor was the warrant made contingent upon some future event that had to occur before a search was authorized. This simply isn't a case where the officers knew that contraband was headed to a specific place and, lacking any other probable cause basis for a search, sought a warrant in anticipation of the contraband's arrival. Tandy's arrest, therefore, did not vitiate the probable cause basis for searching his residence.

The information set forth in the affidavit established solid grounds to believe that Tandy dealt drugs and used his residence as a home base

to store at least some of the items he utilized in his trade. Too, the government proffered evidence at the hearing showing that DeLaTorre had an assistant district attorney scrutinize and approve the warrant application before he presented it to the magistrate. DeLaTorre, then, did all that he could to verify the warrant's adequacy before having it executed. The Court is thus persuaded that, from the perspective of a reasonably well-trained police officer, the affidavit was not "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Leon*, 468 U.S. at 923 (quotations omitted).

### B.   Gateway Inn Room 111

Welch next contends that the evidence seized from Gateway Inn Room 111 should be suppressed. (Doc. 526.) He reasons that even assuming the initial, warrantless entry was supported by probable cause, there was no exigency requiring the agents to enter without first securing a warrant. (*Id.* at 5-6.) And since the evidence discovered during that illegal entry prompted and was referenced in the warrant application, the independent source doctrine does not save the second warrant-based search. (*Id.* at 6-7.)

16

This argument also fails. "A warrantless search is allowed . . . where both probable cause and exigent circumstances exist." *United States v. Tobin*, 923 F.2d 1506, 1510 (11th Cir. 1991); *United States v. Floyd*, 247 F. App'x 161, 166 (11th Cir. 2007). Exigent circumstances exist "where the inevitable delay incident to obtaining a warrant must give way to an urgent need for immediate action." *United States v. Morales*, 868 F.2d 1562, 1575 (11th Cir. 1989); *Floyd*, 247 F. App'x at 166. One "test for whether or not exigent circumstances exist is whether the facts would lead a reasonable, experienced agent to believe that evidence might be destroyed or removed before a warrant could be secured." *United States v. Reid*, 69 F.3d 1109, 1113 (11th Cir. 1995) (citing *United States v. Rodgers*, 924 F.2d 219, 222 (11th Cir. 1991)).

The agents certainly had probable cause to believe that the hotel room contained contraband. Officer Haley knew that when Welch was arrested earlier in the day the trunk of his car reeked of marijuana and contained apparent marijuana residue. Upon the discovery of the hotel room key in Welch's vehicle, the agents naturally suspected that Welch had secreted the drugs away in the hotel room prior to his arrest. Once

the drug dog enthusiastically alerted to the presence of marijuana in the room, the probable cause requirement was clearly satisfied. *United States v. Smith*, 459 F.3d 1276, 1291 (11th Cir. 2006) (citing *United States v. Banks*, 3 F.3d 399, 402 (11th Cir. 1993) ("Our circuit has recognized that probable cause arises when a drug-trained canine alerts to drugs.")).[11]

The evidence of the hearing further establishes that exigent circumstances supported the warrantless entry. As noted above, Harley credibly testified that he heard voices coming from the room and that he saw the room's curtains move slightly. Consequently, it was reasonable for him to assume that someone was inside the room and that they had been alerted to the agents' presence by Malachi's bark. Given the agent's well grounded belief that drugs were located in the room, it was also reasonable for him to conclude that this evidence might be destroyed before a warrant could be secured. *See Kentucky v. King*, ___ U.S. ___,

---

[11] At the hearing, counsel suggested that it was unclear from the warrant affidavit whether Malachi was trained to detect drugs. It is well known in this community that Malachi is a drug detection dog with a stellar record for sniffing out marijuana. *See* note 5 *supra*. More importantly, the warrant affidavit noted that Malachi alerted on the room "indicating the presence of illegal drugs." (Gov't's ex. 2 at 6.)

131 S. Ct. 1849, 1856, 1857 (2011) (noting that "the need 'to prevent the imminent destruction of evidence' has long been recognized as a sufficient justification for a warrantless search" and that this need frequently arises in drug cases "because drugs may be easily destroyed"). Consequently, the Court is satisfied that the exigent circumstances doctrine permitted a brief entry in this instance.[12]

Even if no exigency justified the initial warrantless entry (making it unlawful), the evidence seized during the later warrant search is nonetheless admissible. The "exclusionary rule has no application [where] the Government learned of the evidence from an independent source." *Segura v. United States*, 468 U.S. 796, 805 (1984) (internal quotations omitted). A later search conducted pursuant to a valid warrant based on independent-source evidence cures the illegality "if the

---

[12] Nor did the agents impermissibly "create" the exigency by allowing the dog to alert outside the room. *King*, 131 S. Ct. 1858, 1862-63. There is an important distinction between police-created exigencies designed to subvert the warrant requirement and police-created exigencies that naturally arise in the course of a legitimate criminal investigation. Where the police create the exigency through conduct that does not transgress the Fourth Amendment's reasonableness requirement -- such as by knocking on the door of a residence and announcing their presence -- their warrantless entry to prevent the destruction of evidence is "entirely lawful." *Id.* at 1854.

agents' decision to seek the warrant was [not] prompted by what they had seen during the initial entry." *Murray v. United States*, 487 U.S. 533, 542 (1988).

It is true, as Welch points out, that DeLaTorre's warrant affidavit explicitly mentioned the assault rifle and marijuana observed by Haley during his brief initial entry. (Doc. 526-1 at 4.) In general, it is best not to reference the items discovered during a warrantless exigency-based entry in a later prepared warrant affidavit, for the warrant must rest on probable cause evidence developed independently of the warrantless entry. Under Eleventh Circuit precedent, however, a court can winnow out the offending affidavit allegations and determine whether the remaining allegations furnish an independent probable cause basis. So long as such independent basis exists, and there is credible evidence that the agents would have sought the warrant even had they not made the initial entry, the independent source rule saves the search. *United States v. Chaves*, 169 F.3d 687, 692-93 (11th Cir. 1999).[13]

---

[13] From *Chaves*:

Having found that the warrantless entry violated the Fourth Amendment, we must consider whether the results of the subsequent search, conducted after

At the time of his arrest, Welch a known marijuana distributor, was operating a vehicle that reeked of marijuana. He had a hotel room key in his possession.[14] A drug dog then practically dragged its handler to the hotel room from more than ten rooms away and alerted to the presence of drugs. The Court is satisfied that the agents had *ample* probable cause supporting the issuance of the warrant even if the reference to the marijuana and assault rifle observed by Officer Harley is excluded from consideration. The Court fully credits DeLaTorre's assertion that he would have sought a warrant to search the room even before the initial

the warrant was finally obtained, should have been suppressed. Under this Circuit's precedents, where, as here, the search warrant affidavit is based on information acquired as a result of an illegal entry, we must look to whether the other information provided in the affidavit is sufficient to support a probable cause finding. *United States v. Glinton,* 154 F.3d 1245, 1254–55 (11th Cir. 1998). If so, suppression is not required because "the exclusionary rule has no application where the government learned of the evidence from an independent source," *id.* at 1255, provided, of course, that "the agents' decision to seek the warrant was [not] prompted by what they had seen during the initial entry...." *Murray v. United States,* 487 U.S. 533, 542, 108 S. Ct. 2529, 101 L.Ed.2d 472 (1988). *Accord United States v. Markling,* 7 F.3d 1309, 1314–18 (7th Cir. 1993); *United States v. Restrepo,* 966 F.2d 964, 968–72 (5th Cir. 1992); *United States v. Herrold,* 962 F.2d 1131, 1139–44 (3d Cir. 1992); *United States v. Gillenwaters,* 890 F.2d 679, 681–82 (4th Cir. 1989); *United States v. Salas,* 879 F.2d 530, 536–39 (9th Cir. 1989); *United States v. Veillette,* 778 F.2d 899, 903–04 (1st Cir. 1985).

*Chaves,* 169 F.3d at 692-93.

[14] The agents discovered that it was Welch -- not "Graham" -- who had rented the room earlier in the day.

entry. After all, he had started preparing his warrant affidavit before the initial entry even occurred.

## III. CONCLUSION

For all of the reasons explained above, the motions to suppress (docs. 526 & 530) should be **DENIED**.

**SO REPORTED AND RECOMMENDED** this _18Th_ day of August, 2011.

_____
**UNITED STATES MAGISTRATE JUDGE**
**SOUTHERN DISTRICT OF GEORGIA**